UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BROWN,

                          Plaintiff,

              -against-

SERGEANT LAINO, et al.,

                          Defendants.

**OPINION & ORDER**

24-CV-06677 (PMH)

PHILIP M. HALPERN, United States District Judge:

Carl Brown ("Plaintiff"), currently incarcerated at Shawangunk Correctional Facility, brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights during his incarceration at Green Haven Correctional Facility ("Green Haven"). He brings claims against the following defendants: Sergeant Laino ("Laino"), C.O. Rogers ("Rogers"),[1] C.O. Kwartler ("Kwartler"), C.O. McNeil ("McNeil"), Lieutenant Anspach ("Anspach"), Ashley Bartlett ("Bartlett"), Superintendent Miller ("Miller"), Hearing Officer Gutwein ("Gutwein"), Director of Special Housing Anthony Rodriguez ("Rodriguez"), C.O. Lewis ("Lewis"), and Sergeant Gunsett ("Gunsett," and collectively, "Defendants").

Plaintiff commenced this action on August 23, 2024. (Doc. 1, "Compl."). Liberally construed, Plaintiff's pleading presses six claims for relief under 42 U.S.C. § 1983: (i) excessive force in violation of the Eighth Amendment; (ii) denial of procedural and substantive due process under the Fifth and Fourteenth Amendments; (iii) conditions of confinement that pose a risk to health and safety due to deliberate indifference in violation of the Eighth Amendment; (iv) failure

---

[1] Defendants' counsel's notice of appearance on behalf of Defendant Rogers appears to clarify that this defendant's surname may be "Roger," not Rogers. (Doc. 60). However, for consistency purposes, and as the Complaint identifies this individual as C.O. Rogers, the Court utilizes "Rogers" as this individual's identifier in this Opinion and Order.

to protect in violation of the Eighth Amendment evincing deliberate indifference; (v) retaliation in violation of the First Amendment; and (vi) interference with religious rights in violation of the First Amendment. (*See generally* Compl.). Plaintiff also purports to press state law claims for (vii) intentional infliction of emotional distress, and (viii) violations of the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT Act"). (*Id.*). Plaintiff seeks, in his Complaint, monetary relief as well as both declaratory and injunctive relief. (*Id.* at 20-21).[2]

Defendants filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on May 9, 2025. (Doc. 54).[3] Defendants filed their memorandum of law in support of their motion to dismiss and supporting declaration on that same day. (Doc. 55, "Blaustein Decl."; Doc. 56, "Def. Br."). Plaintiff filed his memorandum of law in opposition on June 9, 2025 (Doc. 61, "Pl. Br."), and Defendants filed their reply on June 25, 2025 (Doc. 66) ("Reply").[4]

---

[2] Citations to specific pages of the Complaint, its attachments, and other filings on the docket correspond to the pagination generated by ECF.

[3] Defendants' Notice of Motion omits Rogers and McNeil as moving Defendants. (Doc. 54). However, by Order dated June 27, 2025, the Court granted Defendants' application to allow Rogers and McNeil to join the moving Defendants' motion to dismiss. (*See* Doc. 68). Accordingly, the Court construes Defendants' motion as being made on behalf of all named defendants.

[4] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))); *see also Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition submission, to the extent consistent with the Complaint.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.[5]

## BACKGROUND

Plaintiff was transferred as an inmate to Green Haven in or about November or December 2022. (Compl. at 1). Years prior to this transfer, Plaintiff commenced a lawsuit against Defendants Gunsett and others in 2005 (the "2005 Action"); and another against Defendants Gunsett and Anspach in 2019 (the "2019 Action"). Both actions alleged violations of Plaintiff's constitutional rights while housed at Green Haven. (*Id.* at 7). Upon arriving back at Green Haven in 2022, Plaintiff wrote to Defendants Bartlett and Miller to request a transfer to a different facility and to complain about the conditions in Green Haven—Plaintiff's request to be transferred was denied. (*Id.* at 7-8, 10-11). On December 29, 2022, shortly after arriving at Green Haven, Plaintiff was issued a misbehavior report ("MBR") by Defendant Lewis for allegedly wearing a hat and refusing to remove it while in the mess hall (the "December 29, 2022 Incident"). (*Id.* at 17). Defendant Anspach, functioning in his role as Hearing Officer, found Plaintiff guilty of interference and refusing a direct order. (*Id.*).

Subsequently, on January 13, 2023, Plaintiff alleges that he was "maliciously and sadistically assaulted" by Defendants Laino, Rogers, Kwartler, and McNeil, in "retaliation for [Plaintiff's] grievances, and lawsuits" (the "January 13, 2023 Incident"). (*Id.* at 9-10). Plaintiff alleges that these Defendants "punched, kicked, stomped, and slammed" him and, once they got him back to his cell and handcuffed him, "one of these sick men, stuck their finger, or a skinny

---

[5] Defendants did not move to dismiss the fifth (retaliation in violation of the First Amendment) and sixth (interference with religious rights in violation of the First Amendment) claims. Therefore, these claims will proceed to discovery.

long object in [Plaintiff's] anal cavity." (*Id.* at 10, 18-19). Plaintiff claims that while "[s]ome of the attack was caught on video," the sexual assault allegation took place "[w]hile off camera." (*Id.*). Plaintiff claims that the assault started because he was "attempting to tell McNeil and Rogers that [Plaintiff] had a flat order;" and as a result of the assault Plaintiff alleges that he suffered a "broken nose, broken finger, dislocated shoulder, bruised and bloody forehead, bruised leg, and a bloody anal cavity." (*Id.* at 10, 18).

Defendant Gutwein acted as the Hearing Officer for Plaintiff's hearing stemming from the January 13, 2023 Incident. (*Id.* at 13). Defendant Gutwein found Plaintiff guilty of various charges, including that Plaintiff "refused to put his hands on the wall to submit to a pat frisk," "violent conduct; creating a disturbance; assault on staff; unhygienic act; refusing direct order," and a "movement regulation violation." (*Id.* at 14). Plaintiff was sentenced by Gutwein to "19 days prehearing SHU (Special Housing Unit), 90 days SHU, 90 days loss of package privileges and 90 days loss of commissary privileges." (*Id.* at 14). Plaintiff appealed the sentence stemming from the January 13, 2023 Incident and Defendant Rodriguez affirmed the verdicts. (*Id.* at 15).

This litigation followed.

## STANDARD OF REVIEW

### I.    Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6] A claim is plausible on its face "when the ple[d] factual

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3,

5

2013); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.    Documents Considered

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit.").

Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Perry v. Mary*

*Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, or where a document's authenticity is disputed, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d))). Specifically, and as relevant here, video recordings may also be considered at the motion to dismiss stage, as incorporated by reference or integral to the complaint, where the "parties concede [that the video] is authentic and accurate." *Alba v. City of New York*, No. 23-CV-08619, 2025 WL 26771, at *2 (S.D.N.Y. Jan. 3, 2025). In that event, "the Court views the allegations of the complaint as true only 'to the extent that they are not contradicted by video evidence.'" *Id.* (citing *Kass v. City of New York*, 864 F. 3d 200, 206 (2d Cir. 2017); *see also Norales v. Acevedo*, No. 21-549, 2022 WL 17958450, at *2 (2d Cir. Dec. 27, 2022). However, where "the parties dispute the authenticity, accuracy, or completeness of a video in portraying relevant events, it may not be a basis for disregarding the truth of allegations in a complaint." *Alba*, 2025 WL 26771, at *2.

Defendants proffer the following documents at issue on this motion introduced via the Blaustein Declaration: (i) records docketed in the 2005 Action and 2019 Action (Blaustein Decl., Exs. A-H); and (ii) records produced pursuant to Local Civil Rule 33.2 discovery, specifically inmate misbehavior reports, medical records stemming from the January 13, 2023 Incident, and disciplinary hearing dispositions (Blaustein Decl., Ex. I, the "33.2 Records"). Defendants also

proffer the alleged video recordings of the January 13, 2023 Incident. Plaintiff had been afforded an opportunity to review them (*see* Blaustein Decl., Ex. J), and the Court also reviewed them *in camera* upon receipt from Defendants (*see* Doc. 50). Additionally, Plaintiff proffers the following documents introduced via the Plaintiff's Opposition: (i) a "New York Law Journal article date 5-14-2025"; ii) a "[Department of Corrections and Community Supervision] ["]DOCCS["] correction officer guilty plea article"; iii) purported medical records and photos of Plaintiff's alleged injuries stemming from the January 13, 2023 Incident; and iv) a "Use of force log," allegedly prepared by Defendant McNeil. (*See* Pl. Br. at 7-17).

As an initial matter, considering Plaintiff's *pro se* status, the Court will consider the above-noted "Exhibits" contained within Plaintiff's Opposition, to the extent they are consistent with the allegations in the Complaint. *See Floyd v. Rosen*, No. 21-CV-01668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to the *pro se* plaintiff's opposition papers).

As to the documents proffered by Defendants, the Court takes judicial notice of the docket of the 2005 Action (*Brown v. Austin, et al.*, No. 05-CV-09443) and 2019 Action (*Brown v. Annucci, et al.*, No. 19-CV-02296), including those documents appended to the Blaustein Declaration. (Blaustein Decl., Exs. A-H). The Court also considers the 33.2 Records, as the inmate misbehavior reports, medical records, and disciplinary hearing dispositions are all either incorporated by reference into the Complaint, or are "relie[d] heavily upon," thus rendering them "integral" to the Complaint (*see* Compl. at 12-18, 20). *DiFolco*, 622 F.3d at 111.

Finally, the Court considers the video recordings of the January 13, 2023 Incident, as Plaintiff references the alleged "attack" being "caught on video," and clarifies that certain of the assault allegations took place "[w]hile off camera," as "[t]here are no cameras in the cells, so what happened in the cell was not recorded." (Compl. at 10, 18-19). Accordingly, such recordings are

similarly considered as "incorporated by reference" or "relie[d] heavily upon." *See Difolco*, 622 F.3d at 111. However, the motion papers make plain that there are disputes as to the "completeness" of the video recordings, as Plaintiff claims that "Defendants did not produce the entire video of the assault," and "have not turned over the entire video because [Defendants] want to cover up the illegal acts." (Pl. Br. at 4-6). Therefore, while the Court may consider the video recordings of the January 13, 2023 Incident at this stage, the Court is mindful that due to the dispute as to completeness, the videos "may not be a basis for disregarding the truth of allegations in [the] [C]omplaint." *See Alba*, 2025 WL 26771, at *2.

## <u>ANALYSIS</u>

### I.   <u>Federal Claims for Relief</u>

Construing the Complaint liberally, Plaintiff presses several claims under 42 U.S.C. § 1983. The Court will address the plausibility of Plaintiff's claims for relief *seriatim.*

#### A.   <u>First Claim for Relief: Excessive Force</u>

Plaintiff's first claim for relief is for excessive force against Defendants Laino, Rogers, Kwartler, and McNeil in violation of the Eighth Amendment. (Compl. at 9-10, 18-19).

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Tofrres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach

constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63). Further, "[s]exual abuse by a corrections officer can give rise to an Eighth Amendment claim when the alleged conduct [1] serves no penological purpose and [2] is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate." *Brown v. Griffin*, No. 19-CV-02296, 2022 WL 767086, at *5 (S.D.N.Y. Mar. 14, 2022).

Defendants rely upon the video recordings of the January 13, 2023 Incident to argue that as Plaintiff's allegations are "directly contradicted by the recordings and other evidence," the excessive force claim must be dismissed. (Def. Br. at 19-21; Reply at 8-9). However, since it is not clear that both Parties concede the "authenticity, accuracy, or completeness," of the video recordings, the Court declines, at this stage, to "disregard[] the truth of allegations" in Plaintiff's Complaint. *See Alba*, 2025 WL 26771, at *2. As Plaintiff claims that he was "punched, kicked, stomped, and slammed," and that only "[s]ome of the attack was caught on video" (Compl. at 10), Plaintiff's allegations are sufficient, at least at this stage, to proceed to discovery on his Excessive Force claim.

Additionally, and in any event, even if the Court were to consider the video recordings to contradict the allegations in the Complaint, Plaintiff's sexual assault allegations would

nevertheless survive Defendants' motion to dismiss. Specifically, Plaintiff alleges that while he was in his cell and "off camera, one of these sick men stuck their finger, or a skinny long object in [Plaintiff's] anal cavity," and then "asked [Plaintiff] if he liked that." (*Id.* at 10, 18). Despite Defendants arguments to the contrary (Def. Br. at 20), these allegations are sufficiently specific, at this stage, for Plaintiff to adequately plead an excessive force claim based in sexual abuse. *See Brown*, 2022 WL 767086, at *5 (holding that allegations that the defendant "grabbed [plaintiff's] crotch and ran his fingers up and down the crack of his bottom and stated how do you like it," served no penological purpose and plausibly were done to "gratify the officer or humiliate plaintiff"); *see also Reyes v. City of New York*, No. 23-CV-01145, 2025 WL 2711159, at *4 (S.D.N.Y. Sept. 23, 2025).

Accordingly, Plaintiff has sufficiently alleged his claim for excessive force.

B. <u>Second Claim for Relief: Violation of Plaintiff's Due Process Rights</u>

Liberally construed, Plaintiff pleads both a procedural and substantive due process claim. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). "To state a substantive due process claim, a plaintiff must allege facts suggesting (1) a deprivation of a protected interest, (2) that the government action was arbitrary and irrational, and (3) that the action was so egregious it shocks the conscience." *Sullivan v. Banks*, No. 24-CV-03251, 2024 WL 4476112, at *3 (S.D.N.Y. Oct. 8, 2024) (citing *Southerland v. City of N.Y.*, 680 F.3d 127, 142 (2d Cir. 2011)).

Plaintiff advances multiple grounds for the alleged deprivations of due process: (1) Defendant Bartlett transferred Plaintiff to Green Haven (Compl. at 8-9), and Defendant Miller accepted this transfer resulting in Plaintiff's arrival at Green Haven, both resulting in violations of Plaintiff's constitutional rights (*id.* at 11-12); and (2) Defendant Lewis "fabricated" an MBR thus taking Plaintiff's "liberty[] and privileges" (*id.* at 17-18), which led to Defendant Anspach, functioning as hearing officer, "depriv[ing] [Plaintiff] of due process," when he found Plaintiff "guilty" of the allegations contained within the same MBR (*id.* at 11).[7] The Court analyzes each *seriatim*.

### i.    *Defendants Bartlett and Miller*

In short, "[i]nmates . . . have no right to be housed in a correctional facility of their choosing." *Tolliver v. Jordan*, No. 19-CV-11823, 2021 WL 2741728, at *8 (S.D.N.Y. July 1, 2021). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth Amendment liberty interest is implicated" when a prisoner disagrees with his placement in a facility. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) (recognizing that an inmate "has no liberty interest in remaining at a particular correctional

---

[7] Construing the Complaint liberally, Plaintiff also appears to plead due process claims against Defendants Gutwein and Rodriguez. Specifically, Plaintiff claims that Gutwein, as the "hearing officer for [Plaintiff's] Tier 3 hearing" concerning the January 13, 2023 Incident, "denied [Plaintiff's] witnesses" and "refused" to call "the staff that was involved" during Plaintiff's hearing. (Compl. at 12-13). Plaintiff also claims that Gutwein violated Plaintiff's due process rights by imposing the sentence detailed, specifically, "19 days prehearing SHU (Special Housing Unit), 90 days SHU, 90 days loss of package privileges, and 90 days loss of commissary privileges." (*Id.* at 13-14). As to Rodriguez, Plaintiff claims that he violated Plaintiff's constitutional rights by reviewing and affirming the disposition of Plaintiff's Tier III hearing, thus "condoning the unlawful assault," and "allowed [Plaintiff's] liberty to be taken without due process." (*Id.* at 15-16). Defendants fail to address these allegations with any specificity—accordingly, Plaintiff's second claim, as pled against Defendants Gutwein and Rodriguez, remains.

facility"). Indeed, the Supreme Court has held that an inmate "has no justifiable expectation that he will be incarcerated in any particular prison within a State" and has no constitutional right to be transferred from one facility to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Inmate transfers between prisons do not "involve an interest independently protected by the Due Process Clause." *Leneau v. Ponte*, No. 16-CV-00776, 2018 WL 566456, at *13 (S.D.N.Y. Jan. 25, 2018); *see also Torrez v. Dep't of Corr.*, No. 17-CV-01223, 2017 WL 3841681, at *4 (D. Conn. Sept. 1, 2017) (Plaintiff "has no constitutional right to be housed in any particular correctional facility.").

As such, Plaintiff cannot plausibly plead that he possessed a liberty interest in being transferred to Green Haven, nor in being denied a transfer out of Green Haven. The claims against Bartlett and Miller are consequently dismissed.

### ii.    *Defendants Lewis and Anspach*

Defendants argue that because Plaintiff "did not appeal the disposition reached by Lieutenant Anspach vis-à-vis the MBR issued by Lewis" (Def. Br. at 22-23; Reply at 14), he failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Def. Br. at 22-23; Reply at 14). The Court disagrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

"Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cnty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Compliance with the PLRA "is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust" his available administrative remedies. *See Gunn v. Beschler*, No. 16-CV-06206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020). Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Priatno*, 829 F.3d at 122 (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

Such clarity does not exist here, as the face of the Complaint contains no clear references to Plaintiff's efforts "or lack of efforts" to exhaust administrative remedies. *See Lloyd v. Regisford*, No. 22-CV-03744, 2023 WL 5935756, at *3 (S.D.N.Y. Sept. 12, 2023). Defendants attach to the Blaustein Declaration Plaintiff's purported "Inmate Disciplinary History," which appears to include a timeline and details of certain of Plaintiff's "incidents" that required hearings. (*See* Blaustein Decl., Ex. I). Defendants rely on this document to apparently show that Plaintiff failed to appeal the disposition at issue concerning Defendants Lewis and Anspach. (Def. Br. at 15-16). However, Plaintiff, in his opposition, states that he "did what he was required to do, he put the appeal of Lt. Anspach's disposition, for Lewis' mbr, in the mailbox," and "[w]hat DOCCS staff does with it after, is out of [Plaintiff's] control." (Pl. Br. at 21). Plaintiff's allegations, at the motion

to dismiss stage, are sufficient to survive, particularly in light of Plaintiff's failure to allege in the Complaint, with the requisite clarity, whether he exhausted his administrative remedies. *See Thompson v. Booth*, No. 16-CV-03477, 2021 WL 918708, at *8 (S.D.N.Y. Mar. 10, 2021) (holding that at summary judgment dismissal was not appropriate where Plaintiff claimed that he "provided multiple grievance complaints to prison officials for filing, but the complaints were never filed"). Therefore, the Court declines to dismiss Plaintiff's claim against Lewis and Anspach on exhaustion grounds at this stage.

Accordingly, and considering the above, the Court grants Defendants' motion on Plaintiff's second claim for relief as to Defendants Bartlett and Miller, and denies as to Defendants Gutwein, Rodriguez, Lewis, and Anspach.

C.   Third Claim for Relief: Conditions of Confinement

Construed liberally, Plaintiff complains that his conditions of confinement posed a risk to his health and safety and thus amounted to deliberate indifference by Defendants Bartlett and Miller, in violation of the Eighth Amendment. (Compl. at 8-9, 11-12).

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to state a claim for relief where, as here, relief is based on a theory that "the conditions of . . . confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).

Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This assessment is not "static," as "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was "deprived of [his] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). As for the second step of the analysis, the subjective element, a defendant:

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger").

Of course, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987). The fact that a defendant is a supervisor is not enough to impute personal involvement onto that person;

16

liability requires, rather, that the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Given this prerequisite, Plaintiff implicates neither Bartlett nor Miller in an Eighth Amendment conditions of confinement claim.

Specifically, with respect to both Bartlett and Miller, the only connection between them and any constitutional violation—aside from sending Plaintiff to Green Haven instead of another facility, which, as discussed already, does not implicate a constitutional right—is that they were allegedly aware of Plaintiff's prior lawsuits and alleged assaults, as Plaintiff "made Bartlett and Miller fully aware of his concerns before the third assault." (*See* Compl. at 8-9, 11-12; *see also* Pl. Br. at 21-22). Such a role is insufficient to establish personal involvement because "receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (commissioner's receipt of letters from an inmate insufficient to establish personal involvement); *McIntosh v. United States*, No. 14-CV-07889, 2016 WL 1274585, at *16 (S.D.N.Y. Mar. 31, 2016) ("[M]ere receipt of a complaint or grievance from an inmate is insufficient to establish personal involvement . . . ."); *Malik v. City of New York*, No. 11-CV-06062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) ("The only factual basis for this allegation, however, is that Malik wrote . . . Argo . . . regarding his grievances. This allegation is insufficient to make out a *prima facie* claim of personal involvement . . . ."), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012); *Higgins v. Artuz*, No. 94-CV-04810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Watson v. McGinnis*, 964 F. Supp. 127, 130

(S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

As Plaintiff failed to plead facts establishing that either Bartlett or Miller were personally involved in any Eighth Amendment violation, the claim for relief pressed against them under this theory must be dismissed.

### D. Fourth Claim for Relief: Failure to Protect/Deliberate Indifference

Plaintiff's fourth claim for relief is for failure to protect resulting in deliberate indifference against Defendants Gunsett and Lewis in violation of the Eighth Amendment. (Compl. at 16-18).

For Plaintiff to establish a failure to protect claim under the Eighth Amendment, he must show that Defendants acted with "deliberate indifference." *Edwards v. Black*, 854 F. App'x 382, 383 (2d Cir. 2021). The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm . . . ." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). On this type of claim, "[a] plaintiff may show a substantial risk of harm from either a specific assailant or a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented." *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (second alteration in original, internal citations and quotation marks omitted). The second prong, the "subjective prong," requires action with a "sufficiently culpable state of mind, which in prison-conditions cases, is one of deliberate indifference to inmate health or safety." *Morgan*, 956 F.3d at 89. "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015).

Here, Plaintiff alleges that (i) Defendant Gunsett called Plaintiff "a rapist and homo" in front of other incarcerated individuals (Compl. at 16; Pl. Br. at 22-23); and (ii) Defendant Lewis "has a history of informing other [incarcerated individuals] of [Plaintiff's] criminal charges," and "spread rumors" about such charges to other individuals "that could have harmed [Plaintiff]" (Compl. at 17-18). Defendants argue that Plaintiff's allegations as to Gunsett, even if true, are insufficient to state a claim for relief. (Def. Br. at 23-24). The Court agrees, as "name-calling," even the type that involves homophobic or racial slurs, does not rise to the level of a constitutional violation considering the allegations here. *See Brown*, No. 19-CV-02296, 2022 WL 767086, at *6-7.[8] However, the same cannot be said as to Plaintiff's claim against Defendant Lewis. At this stage, Plaintiff's claims concerning Lewis "spreading rumors [to other inmates] about [Plaintiff's] criminal charges," coupled with the nature of Plaintiff's charges, *i.e.* sex crimes, is sufficient to survive a motion to dismiss. *Id.* at *6; *see also Smith v. Miller*, No. 15-CV-09561, 2017 WL 4838322, at *11-12 (S.D.N.Y. Oct. 23, 2017) (collecting cases). This is further so, as Defendants' only arguments concerning Plaintiff's allegations regarding failure to protect against Lewis are non-specific, and to the extent made for the first time on reply, they are waived.[9]

Accordingly, Plaintiff has sufficiently alleged his claim for failure to protect as to Lewis only—the Court grants Defendants' motion to dismiss as to Gunsett on this claim.[10]

[8] Further, Plaintiff, in his opposition, changes the narrative surrounding Gunsett's "name-calling," stating that such statements were made in front of "staff" and "caused staff to assault Brown," as opposed to incarcerated individuals generally, which was initially pled in the Complaint. (*See* Pl. Br. at 22-23). Therefore, as such allegations are inconsistent, the Court declines to consider such allegations as supplementing the Complaint. *Vail*, 68 F. Supp. 3d at 427.

[9] Defendants, in their Reply, argue that Plaintiff failed to sufficiently exhaust administrative remedies as to the allegations that Lewis "spread[] rumors," as such issue "must be separately grieved." (Reply at 14). The Court will not consider this argument, which is raised for the first time in the Reply. *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

[10] To the extent Plaintiff purports to press a substantive due process claim against Gunsett for the same

II.    <u>State Law Claims for Relief</u>

The Court construes Plaintiff's seventh (intentional infliction of emotional distress) and eighth (violations of the HALT Act) claims as being brought under New York state law. Defendants argue that Plaintiff's intentional infliction of emotional distress claim must be dismissed for want of subject-matter jurisdiction pursuant to New York Correction Law § 24 ("Section 24"). (Def. Br. at 21-22).[11] Although Defendants do not advance their Section 24 argument for Plaintiff's claim for violations of the HALT Act, the Court, *sua sponte*, considers whether this statute bars all of Plaintiff's state-law claims, as this question goes to the Court's subject matter, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), as well as by operation of 28 U.S.C. § 1915(e)(2)(B).

Section 24 provides, in pertinent part:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

---

allegations, such a claim is similarly dismissed as duplicative, and for failure to plead a constitutional violation. *See Williams v. New York State*, No. 24-CV-04285, 2025 WL 2452219, at *6 (S.D.N.Y. Aug. 26, 2025).

[11] To the extent Plaintiff has pled a negligence claim, such claim is also dismissed under the same reasoning as Plaintiff's seventh and eighth claims, detailed *infra*. (Def. Br. at 14-15).

N.Y. Corr. Law §§ 24(1)-(2). "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." *Sughrim v. New York*, No. 19-CV-07977, 2020 WL 7047697, at *98 (S.D.N.Y. Nov. 30, 2020) (quoting *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015)); *see also Davis v. McCready*, 283 F. Supp. 3d 108, 124 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law . . . must be dismissed for lack of subject matter jurisdiction."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) ("Plaintiff's state law claims against Defendants . . . are barred because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court."). "The test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of instructions." *Cruz*, 24 F. Supp. 3d at 310.

Here, nothing in the Complaint suggests that Defendants were acting outside the scope of their employment as DOCCS's employees. To that end, all of the actions alleged in the Complaint "arose as a result of [Defendants] discharging their duties" as DOCCS's employees in association with the January 13, 2023 Incident and its aftermath. *McCray v. Lee*, No. 16-CV-01730, 2021 WL 4392280, at *11 (S.D.N.Y. Sept. 24, 2021) (alteration omitted). Thus, Section 24 bars Plaintiff's state law claims against Defendants. *See Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 333–34 (S.D.N.Y. 2006) (holding that corrections-officer defendants were acting within the scope of their employment when they "[f]risk[ed]" and used "physical force against" the plaintiff); *Ortiz v. Ledbetter*, No. 19-CV-02493, 2020 WL 2614771, at *9 n.8 (S.D.N.Y. May 22, 2020) (holding that the defendants were "shielded" from "Plaintiff's supervisory liability allegations" under Section 24).

Accordingly, Plaintiff's seventh and eighth claims for relief are dismissed, as well as any negligence claim for relief allegedly pled.

III.    <u>Equitable Relief</u>

In addition to monetary damages, Plaintiff also requests "injunctive relief" and "declaratory relief," because of the alleged violations pled within the Complaint. (Compl. at 21). Specifically, as to injunctive relief, Plaintiff requests "that all 11 of the defendants in this action be terminated." As to declaratory relief, Plaintiff requests a declaration that: "(1) Defendants Laino, McNeil, Rogers, and Kwartler used unlawful force on [Plaintiff]"; and "(2) [t]hat Defendant Bartlett violated Plaintiff's constitutional rights when she sent [Plaintiff] back to Green Haven . . . knowing that Green Haven staff assaulted [Plaintiff] twice in the past." (*Id.*). Defendants argue that Plaintiff's requested relief is improper and must be dismissed. (Def. Br. at 24-27). The Court agrees.

At the outset, and as noted by Defendants (*id.* at 25), to grant an injunction, the Court must be able to effectuate the relief sought and thus, Defendants must have the "authority to perform the required act." *Loren v. Levy*, No. 00-CV-07687, 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003); *Blackburn v. Goodwin*, 608 F.2d 919, 925 (2d Cir. 1979). Here, according to Plaintiff and if granted in full, Plaintiff's requested injunction would result in all eleven (11) defendants being terminated from their positions at DOCCS. There is no indication in the record that any of the Defendants have the jurisdiction, capacity and/or authority to compel termination of DOCCS employees. DOCCS itself is not a party to this proceeding. Accordingly, the Court denies Plaintiff's application for injunctive relief on this ground alone. *See Marshall v. Annucci*, No. 16-CV-08622, 2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018).

As to Plaintiff's request for declaratory relief, the Court agrees with Defendants that such request is duplicative of certain of Plaintiff's claims for relief, specifically, the first (excessive force in violation of the eighth amendment against Laino, McNeil, Rogers, and Kwartler) and second (due process violation against Bartlett) claims. Therefore, as a "judgment in [Plaintiff's] favor on his constitutional claims would serve the same purpose as [his proposed] declaration," Plaintiff's request for declaratory relief is similarly denied. *See Melvin v. City of New York*, No. 24-CV-04118, 2025 WL 692126, at *8 (S.D.N.Y. Mar. 4, 2025).[12]

Accordingly, Plaintiff's requests for equitable relief are denied.

IV.    <u>Leave to Amend</u>

Finally, Plaintiff, at the end of his opposition brief, requests that the Court "allow him to amend or supplement his complaint, if any claims are dismissed," as Plaintiff "feels his Complaint has merit and that these public policy issues need to be publicized." (Pl. Br. at 25). This request is both procedurally and substantively improper. *See Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *16 (S.D.N.Y. Feb. 9, 2022) ("Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading[,] is improper under Fed. R. Civ. P. 15."); *Jackson v. Annucci*, No. 20-CV-02008, 2021 WL 2581340, at *2 (S.D.N.Y. June 23, 2021) (denying motion for default judgment made in opposition brief); *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying request for sanctions made in opposition brief); *Martin v. Mihalik*, No. 19-CV-07979, 2021 WL 1738458, at *1 (S.D.N.Y. May 3, 2021) (denying motion for pro bono counsel made in opposition brief);

---

[12] In any event, as Defendants pointed out in the Reply, Plaintiff has also failed to substantively respond to Defendants' arguments concerning equitable relief and has thus abandoned such request. *See Oladokun v. United States*, No. 23-CV-05899, 2025 WL 1786913, at *2 (E.D.N.Y. June 26, 2025) (citing *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. Mar. 31, 2021)).

*Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" made in opposition brief).

Even if the Court were to construe Plaintiff's request in his opposition brief as a sufficient alternative to the motion requirement embodied in the applicable rules, *see* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."), Plaintiff fails to meet his burden for an amendment. *See* Fed. R. Civ. P. 15. He does not offer any new facts that would cure the substantive deficiencies discussed above, as neither his subjective "feel[ing] that the Complaint has merit" nor his desire to "publicize[]" his alleged "public policy issues," are sufficient to cure any deficiencies. (Pl. Br. at 25). Plaintiff also fails to articulate why an amendment would not be futile. Additionally Plaintiff has declined a previous opportunity to amend the Complaint. (Doc. 36 (Plaintiff states, "I do not wish to amend the Complaint at this time.")). Accordingly, leave to amend is denied. *See Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile").[13]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED as follows: the second claim for relief is dismissed as to Defendants Bartlett, Miller, and Gunsett; the third claim for relief is dismissed in its entirety; the fourth claim for relief is dismissed as to Defendant Gunsett; the

---

[13] Defendants appear to also request that the Court dismiss the Complaint or direct Plaintiff to "withdraw any claim asserted herein in the 2019 Action" under Rule 42(a)(3) of the Federal Rules of Civil Procedure, alleging that the issues raised herein are duplicative of the 2019 Action. (Def. Br. at 27). Plaintiff has conceded that any claims herein which are also the subject of the 2019 Action should be dismissed. (Pl. Br. at 6). The Court will take this issue up at a more appropriate time and will dismiss, on consent, all such duplicative claims herein.

seventh and eighth claims for relief are dismissed in their entirety; and to the extent a negligence claim for relief was pled, such claim is similarly dismissed in its entirety.

The motion is DENIED as to the first claim for relief; the second claim for relief as to Defendants Gutwein, Rodriguez, Anspach, and Lewis; and the fourth claim for relief as to Defendant Lewis. Further, as Defendants have not moved as to the fifth and sixth claims, such claims proceed as follows: the fifth claim for relief remains as pled against Defendants Laino, Rogers, Kwartler, and McNeil; and the sixth claim for relief remains as pled against Defendant Miller. These claims shall proceed to discovery.

Plaintiff's requests for equitable relief are DENIED.

Defendants Laino, Rogers, Kwartler, McNeil, Miller, Rodriguez, Lewis, Anspach, and Gutwein are directed to file an answer to the Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully requested to: (1) terminate Bartlett and Gunsett as Defendants; (2) terminate the pending motion (Doc. 54); and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:    White Plains, New York
          November 19, 2025

_____
PHILIP M. HALPERN
United States District Judge

25